FILED
2010 Aug-20  AM 10:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL H. WALDROP, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:09-CV-908-VEH** |
| | ) | |
| **CITY OF HEFLIN, ALABAMA** | ) | |
| **ANNA BERRY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## Memorandum Opinion

Before the Court is the Defendants' Motion for Summary Judgment (Doc. 9), in which the Defendants, City of Heflin, Alabama (the "City"), and Anna Berry (the "Mayor"), seek summary judgment on all of the Plaintiff's claims. The Plaintiff, Daniel H. Waldrop ("Waldrop"), contends that genuine issues of material fact exist, and thus the Defendants are not entitled to summary judgment. For the reasons discussed below, the Court finds that the Motion for Summary Judgment should be granted.

## PROCEDURAL BACKGROUND

Waldrop originally filed his complaint in the Circuit Court of Cleburne County, Alabama, on July 11, 2007, against the City of Heflin, Alabama. (Doc. 1, ex. 1). In

his complaint, Waldrop alleged three claims: breach of contract, fraud, and defamation.  (Doc. 1, ex. 1, pp. 9, 10, and 13).  On May 4, 2009, Waldrop filed an amended complaint, adding as a defendant Anna Berry, individually and in her official capacity as the Mayor of the City of Heflin.  (Doc. 1, ex. 16).  In his amended complaint, Waldrop alleged his original claims of breach of contract and fraud against the City of Heflin, and alleged claims of defamation and race discrimination under 42 U.S.C. § 1981, by and through § 1983, against both the City and the Mayor.  (Doc. 1, ex. 16, pp. 8, 9, 11, 13 and 14).  The Defendants removed the case to this Court on May 7, 2009, based upon federal question jurisdiction.  (Doc. 1).  On April 16, 2010, the Defendants filed this motion for summary judgment.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a

genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant.  *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248;  *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment

by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by

4

using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## FACTUAL BACKGROUND[1]

In June 2005, Waldrop applied for a police officer position with the City of Heflin. (Dep. of Waldrop, pp. 21-27, doc. 10, ex. 1). According to Waldrop, the Chief of Police for the City of Heflin, Hugh Lambert, told him that he was going to be hired for the position. (Dep. of Waldrop, pp. 35-36, doc. 10, ex. 1.). Waldrop responded that he would turn in his two week notice to his current employer, and

---

[1]Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

Lambert replied that that would be fine, to go ahead and give his notice. (Dep. of Waldrop, p. 36, doc. 10, ex. 1). Waldrop promptly gave his employer two weeks notice. (Dep. of Waldrop, pp. 36-37, doc. 10, ex. 1). A day or two later, Lambert called Waldrop and told him that he needed to be measured for a vest. (Dep. of Waldrop, p. 37, doc. 10, ex. 1). Waldrop was the first in the Heflin Police Department to be fitted for a vest. (Aff. of Marvin McCormick, ¶¶ 7, 8, doc. 15, ex. 8). Soon thereafter, in mid to late July, Waldrop called Lambert to inquire about how soon he could start working. (Dep. of Waldrop, p. 40, doc. 10, ex. 1). Lambert told Waldrop that he, Lambert, needed to talk to Mayor Anna Berry, but he assured Waldrop that he had spoken to her previously, and that everything was fine. (Dep. of Waldrop, pp. 40-41, doc. 10, ex. 1). In late July, however, Waldrop learned that he was one of five candidates on a list for consideration for the position. (Dep. of Waldrop, p. 42, doc. 10, ex. 1).

On August 1, 2005, the Personnel Committee of the City of Heflin reviewed the applications of the top five candidates, and decided to interview Candice Hill, identified as the "most needed candidate;" Susan Nall, a top candidate; and Joshua Barnett, a good candidate. (Mins. from Pers.Comm. Meeting of the City of Heflin, doc. 15, ex. 1) . The committee determined that "Heath [Waldrop] would be a good candidate for another city but Heath is known in the community and his reputation

6

as a teenager/young adult was not considered a positive for the public image of the department."[2]  (Mins., doc. 15, ex. 1).

After Waldrop learned that he had not been selected for an interview, Marvin McCormick told Waldrop hat he had met with the Mayor to discuss the reasons for the City's decision, and that she told him that she needed a minority in the position because of lawsuits pending against the City, and that Waldrop's background was a problem.  (Aff. of McCormick, ¶¶ 12-13, doc. 15, ex. 7).  In addition, McCormick told Waldrop that the Mayor's secretary had told him that the Mayor had commented that "[Waldrop's] dad had done drugs," so "what do you think [Waldrop] does." (Dep. of Waldrop, p. 51, doc. 10, ex. 1).  Waldrop also confronted a city counsel member, Kenneth Hanson, at his home to discuss the City's decision.  Hanson told Waldrop that "what had happened to [your] dad in 2001[3] would – would pretty much follow [you] around, if [you] tried to find any kind of city employment."  (Dep. of Waldrop, p. 55, doc. 10, ex. 1).  In early September 2005, the City Council voted unanimously to hire Josh Barnett, a white male, for the police officer position.  (Doc. 10, ex. 4, ¶¶ 4, 7, 16).

---

[2]In 2001, three years prior to applying for a position with the City, Waldrop was involved in an automobile accident that received national coverage in the media.

[3]Waldrop's dad was a police officer with the City of Heflin from 1995 until 2001, when he lost his job with the City for purchasing a narcotic without a prescription. (Dep. of Waldrop, pp. 8, 55-56, doc. 10, ex. 1).

# DISCUSSION

## I.  The Breach of Contract Claim Against the City:

Waldrop contends that a contract was formed when Lambert, the Chief of Police, offered the position to Waldrop and Waldrop accepted.  (Dep. of Waldrop, p. 36-37, doc. 10, ex. 1).  Waldrop further contends that "there was an established protocol in which the City effectively allowed Chief Lambert to select and hire officers."  Pl.'s Opp'n to Def.'s Mot. For Summ. J., p. 4, doc. 14, *citing* Clay Aff. at ¶¶ 5, 10-12, doc. 15, ex. 7; McCormick Aff. at ¶¶ 3-5, doc. 15, ex. 8.  Based upon this protocol, Waldrop claims that Lambert had apparent authority to bind the City to a contract with Waldrop.

The City disagrees and seeks summary judgment on Waldrop's breach of contract claim.  The City claims that Waldrop cannot establish a breach of contract claim because he cannot prove two essential elements of a contract: acceptance and assent.  According to the City, Lambert did not have authority to bind the City to a contract; therefore, there was no acceptance or assent.  The City further contends that Lambert did not have express, implied, or apparent authority to bind the City.  In support of its position, the City points out that Waldrop suspected that Lambert could not act alone, and even admitted that Lambert "told him that his choice had to be approved by the Council."  Defs.' Reply Br., p. 5, doc. 16.  In addition, the City

supports its position with the fact that "the authority to hire municipal employees is vested _by law_ in the Mayor and the City Council, not the chief of police."[4]  Defs.' Br. in Supp. of their Mot. for Summ. J., p. 10, doc. 11.

Under Alabama law, the following elements are necessary for a breach of contract claim: "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." _Ex parte Jackson Cnty. Bd. of Educ._, 4. So.3d 1099, 1103 (Ala. 2008), _quoting Reynolds Metals Co. v. Hill_, 825 So.2d 100, 105-06 (Ala.2002).  To establish a valid contract, the following elements must be proven: """an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.""" _Ex parte Jackson Cnty. Bd. of Educ._, 4. So.3d at 1103-04, _quoting Ex parte Grant_, 711 So.2d 464, 465 (Ala.1997) (_quoting Strength v. Alabama Dep't of Fin., Div. of Risk Mgmt._, 622 So.2d 1283, 1289 (Ala.1993)).  As noted above, the City claims that Waldrop cannot prove acceptance and assent on the part of the City.  Waldrop contends that Lambert had apparent authority to bind the City to the contract based upon established protocol.  The Supreme Court of Alabama has described apparent authority, and the requirements to prove apparent authority, as follows:

---

[4]The City cites ALA. CODE §§ 11-43-81, 11-47-5, 11-43-83, 11-43-56, 11-43-7, and 11-43-43 in support of its contention that the authority to hire municipal employees is vested in the Mayor and the City Council.

"When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency." *Malmberg v. American Honda Motor Co.*, 644 So.2d 888, 890 (Ala.1994).

"The authority of an agent to contract on behalf of a principal must be either expressed, implied or apparent. 2A C.J.S. Agency. . . .  It is stated in 2A C.J.S. Agency § 153 as follows:

. . . .

. . . .

. . . .

". . . The doctrine of apparent authority rests upon the principle of estoppel, which forbids one by his acts to give an agent an appearance of authority which he does not have and to benefit from such misleading conduct to the detriment of one who has acted in reliance upon such appearance. We find in Am.Jur.2d, Agency, § 74, p. 476 the following:

> " 'The apparent power of an agent is to be determined by the acts of the principal, and not the acts of the agent; a principal is responsible for the acts of the agent only where the principal by his acts or conduct has clothed the agent with the appearance of authority and not where the agent's own conduct and statements have created apparent authority.' "

*Patterson v. Page Aircraft Maint., Inc.*, 51 Ala.App. 122, 125-26, 283 So.2d 433, 436 (Ala.Civ.App.1973) (emphasis omitted).

To avoid a summary judgment, a party relying on apparent agency must

" ' "show that he was misled by the appearances relied upon. It is not enough that he might have been, ... so misled. It must also appear that he had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough." ' "

*Brown v. St. Vincent's Hosp.*, 899 So.2d 227, 241 (Ala.2004) (*quoting Union Oil Co. of California v. Crane*, 288 Ala. 173, 180 (1972), *quoting in turn Birmingham News Co. v. Birmingham Printing Co.*, 209 Ala. 403, 405, 96 So. 336, 339 (1923)).

*McLemore v. Hyundai Motor Mfg. Alabama, LLC*, 7 So.3d 318, 328-29 (Ala. 2008).

In this case, Waldrop does not dispute that only the City Council and the Mayor are vested with the actual authority to hire municipal employees.  Pl.'s Opp'n to Defs.' Mot. for Summ. J., p. 9, doc. 14.  Thus, it is undisputed that there was no express agency relationship between the City and Lambert.  Therefore, to survive summary judgment, Waldrop must present substantial evidence of apparent authority.  The apparent authority of Lambert is determined by acts of the City.  To establish apparent authority, then, Waldorp must show action or conduct by the City that has clothed Lambert with the appearance of authority.  He must also show that he was misled by the appearance of authority, and that he had reasonable cause to believe that the authority existed.  Waldrop offered the affidavits of two former police officers, Richard Clay and Marvin McCormick.  Clay testified that after interviewing with Lambert for a police officer position, Lambert told him that he had the job.  Lambert also told Clay "that, although [Lambert] had to get the City Council's approval, they always approved his recommendations." Aff. of Clay, ¶ 5, doc. 15, ex. 7.  Clay also testified that "it was well-known that the Council always hired the

candidate recommended by Chief Lambert," and that "[t]here was no indication by the City of Heflin, at any time, that the established and previously followed protocol had changed."  Aff. of Clay, ¶ 10-11, doc. 15, ex. 7. Likewise, McCormick testified that he could not recall "any other occasion on which [Lambert] recommended a candidate who was not hired," during the time that Lambert was Chief of Police.  Aff. of McCormick, ¶4, doc. 15, ex. 8.

Having reviewed the evidence submitted by Waldrop, the Court concludes that he has failed to present substantial evidence that Lambert had apparent authority to bind the City to a contract.  Both Clay and McCormick testified that Lambert would decide on which to candidate to hire, and then *recommend* the candidate to the City Council.  The ultimate decision of whether a candidate recommended by Lambert would be hired was made by the City Council, not Lambert.  Clearly, Waldrop has shown that the City Council previously hired candidates that were recommended by Lambert, but Waldrop has failed to present any evidence of actions or conduct on the part of the City that clothed Lambert with authority to hire employees, or that the City indicated that it would always hire candidates recommended by Lambert.  Moreover, Waldrop has filed to show that he was misled by the appearance of authority, and that he had reasonable cause to believe such authority existed.  Therefore, Waldrop's

equitable estoppel argument, to the extent it was even developed, fails.[5]

For all these reasons, the City is entitled to judgment as a matter of law on Waldrop's breach of contract claim.[6]

## II.  The Fraudulent Misrepresentation Claim Against the City:

Waldrop alleges that the City, through its agent, Lambert, made representations to Waldrop that he would be employed as a police officer with the City,[7] and that

---

[5]The requisite elements for equitable estoppel are as follows:

> [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston*, 678 So.2d 765, 768 (Ala. 1996) (*quoting Mazer v. Jackson Ins. Agency*, 340 So.2d 770, 773 (Ala.1976), *quoting in turn* Dobbs, Remedies § 2.3 (1973)).

[6]The City also asserted that it is entitled to the affirmative defense of the statute of frauds. Having determined that Waldrop failed to put forward evidence legally sufficient to prove that Lambert had apparent authority to contract on behalf of the City, the Court need not address the issue.

[7]In his brief in opposition to the Defendants' motion for summary judgment, Waldorp states that "Lambert's representation that he had the authority to hire Waldrop was false, as ALA. CODE § 11-43-81 (1975) provides that the mayor is the chief executive officer of the city and has general supervision and control of all other officers and the affairs of the city or town." Pl.'s Opp'n to Defs.' Mot. for Summ. J., p. 13, doc. 14 (citations and quotations omitted).  The City aptly notes that "Rule 9(b) required Plaintiff to plead his fraud claims with specificity, and '[a] plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment.'" Defs.' Reply Br., p. 6, doc. 16, *citing Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  Waldrop did not properly plead this particular claim, and it will therefore not be considered.  Even if Waldrop had properly pled this claim in his complaint, it would not survive summary judgment because Waldrop failed to comply with ALA. CODE §§ 11-47-23 and 11-47-192, as discussed below.

Waldrop relied upon those representations by resigning from his employment. (Pl.'s compl., ¶ 57, doc. 1, ex. 1). Waldrop contends that those representations were false and were known to the City to be false, and were made with the intention that he rely upon them, which he did to his detriment without knowledge of the falsity of the representation. (Pl.'s compl., ¶ 59-60, doc. 1, ex. 1). The City seeks summary judgment on this claim for five reasons,[8] only one of which will be addressed, the municipal non-claim affirmative defense.

The City contends that Waldrop was required to present this claim by sworn statement to the City Clerk within six months of the accrual of the claim, as required by ALA. CODE §§ 11-47-192 and 11-47-23. Because Waldrop did not do so, the City contends that it is entitled to summary judgment. Waldrop argues that the City was on notice because he spoke to a member of the City Council about the reasons he was not selected for the position, and because the City's officers were "the primary actors." Pl.'s Opp'n to Defs.' Mot. For Summ. J., p. 14, doc. 14.

ALA. CODE § 11-47-23 requires that tort claims for damages against a municipality must be presented to the clerk "within six months from the accrual

---

[8]The City contended that it was also entitled to summary judgment on Waldorp's fraudulent misrepresentation claim for the following reasons: (1) the City has municipal immunity; (2) Waldrop cannot prove reasonable reliance, a necessary element of his claim; (3) based upon the statute of frauds affirmative defense; and (4) based upon the state-agent immunity affirmative defense.

14

thereof or shall be barred." ALA. CODE § 11-47-23.   ALA. CODE § 11-47-192

provides that "[n]o recovery shall be had against any city . . . on a claim for personal

injury received, unless a sworn statement be filed with the clerk by the party injured

. . . stating substantially the manner in which the injury was received, the day and

time and the place where the accident occurred and the damages claimed." ALA.

CODE § 11-47-192.  These provisions must be construed *in pari materia*. *Harris v.*

*City of Montgomery*, 435 So.2d 1207, 1214 (Ala. 1983).  Waldrop knew in early

August 2005[9] that he was not being hired for the police officer position.  He was

required by ALA. CODE §§ 11-47-23 and 11-47-192 to file a sworn statement, as

described above, with the clerk within six months, or by early February 2006.  It is

undisputed that Waldrop did not file such a statement.  Contrary to Waldrop's

contention that City officials were on notice of his claim, constructive notice "does

not satisfy the . . . statutory requirements of § 11-47-192.  "This failure to file the

statutorily mandated claim within six months acts as a procedural bar to all tort claims

against the City." *Wheeler v. George*, Nos. 1070484, 1070487, 1070514, 2009 WL

4506591, at *17 (Ala. Dec. 4, 2009).  For these reasons, the City is entitled to

---

[9]In his amended complaint, Waldrop states that he learned on July 26, 2005, that he
would not be hired.  Pl.'s Am. Compl., ¶ 36, doc. 1, ex. 16.  The Personnel Committee, however,
did not decide until August 1, 2005, which candidates would be interviewed.  Therefore, he
could not have known of their decision before August 1, 2005.

judgment as a matter of law on Waldrop's fraudulent misrepresentation claim.

III.  Waldrop's Defamation Claims:

A.  Against the Mayor:[10]

Waldrop contends that the Mayor defamed him by commenting to her secretary, "if [Waldrop's] dad did drugs, what do you think he does?"  Pl.'s Am. Compl., ¶ 50, doc. 1, ex. 16.  In addition, he complains that she commented during a council meeting that Waldrop had a "troubled past."  Pl.'s Opp'n to Defs.' Mot. for Summ. J., p. 18, doc. 14.  The Mayor contends that Waldrop's defamation claim against her is barred by the two year statute of limitations, citing ALA. CODE § 6-2-38(k).  Waldrop did not add the Mayor as a defendant until filing an amended complaint on May 4, 2009, nearly four years after the events giving rise to his complaint occurred.  Of course, Waldrop argues that the claim against the Mayor relates back, pursuant TO FED. R. CIV. P. 15(c), to the original complaint.

FED. R. CIV. P. 15(c)(1) allows an amended pleading to relate back to the date of a timely filed pleading to survive a statute of limitations challenge if certain conditions are met.  *Krupski v. Costa Crociere S. P. A.*, 130 S.Ct. 2485, 2489 (2010).

---

[10]Waldrop asserted defamation claims against the Mayor in her individual and official capacities.  A claim against a state officer in her official capacity is "'functionally equivalent' to claims against the entity [she] represent[s]," *Haley v. Barbour County*, 885 So.2d 783, 788 (Ala. 2004) (citations omitted).  Thus, the official capacity claim against the Mayor will be considered with the defamation claim against the City.

Rule 15(c)(1) provides as follows:

> (c) Relation Back of Amendments.
>
>> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>>
>>> (A) the law that provides the applicable statute of limitations allows relation back;
>>>
>>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>>>
>>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>>
>>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>>
>>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).   In this case, because Waldrop added the Mayor as a defendant in his amended complaint, FED. R. CIV. P. 15(c)(1)(C) applies.  "Where an amended pleading changes a party or a party's name, the Rule requires, among other things, that 'the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the

17

proper party's identity.'" *Krupski*, 130 S.Ct. at 2489, *quoting* Rule 15(c)(1)(C).  In this case, Waldrop referenced the Mayor numerous times in his original complaint, stating that "the Mayor and the Personnel Committee had decided not to hire . . . Waldrop;" that "she did not have enough support from the Council to hire . . . Waldrop," citing his "troubled past;" and that "'if [Waldrop's] dad did drugs, what do you think he does?'" Pl.'s Compl. ¶¶   35, 36, 49, doc. 1, ex. 1.  In fact, the foregoing statements are the basis of his defamation claim against her.  Waldrop does not explain his decision for failing to name her as a defendant in his original complaint.  Waldrop merely states that his original complaint "was sufficient to put the Defendants on notice."  Pl.'s Opp'n to Defs.' Mot. for Summ. J., p. 18, doc. 14.  Showing notice to the defendants, however, is not the only requirement for relation back under Rule 15(c)(1)(C).  The plaintiff must also show that the party to be brought in, the Mayor in this case, "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii).  Waldrop has not shown that there was any mistake concerning the Mayor's identity.  In fact, he included the conduct giving rise to the claims against her in his original complaint.  He was not under any misimpression about the Mayor's role in this dispute.   "When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective

defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Krupski*, 130 S. Ct. at 2496.  Waldrop has failed to meet the requirements of Fed. R. Civ. P. 15(c)(1)(C).  His claims against the Mayor therefore do not relate back to the date of the filing of his original complaint.

The statute of limitations requires that defamation claims be brought within two years.  ALA. CODE § 6-2-38(k); *see also Hollander v. Nichols*, 19 So.3d 184, 194-95 (Ala. 2009).  The Mayor's statements were made in July and August 2005. Waldrop filed his amended complaint on May 4, 2009.  Because Waldrop's claims against the Mayor were filed nearly two years after the statute of limitations ran, his claims are time-barred.  For this reason, the Mayor is entitled to judgment as a matter of law on this claim.

B.  Against the City and the Mayor in her Official Capacity:

Waldrop claims that "[t]he Mayor and the City Council made false and defamatory statements about Plaintiff when they claimed that Plaintiff came from too troubled a background to join the Heflin Police Department, and intimated that he had a history of drug use."  Pl.'s Am. Compl. ¶ 68, doc. 1, ex. 16.  The City and the Mayor contend that they are entitled to summary judgment on this claim because Waldrop did not file a notice of claim within six months, as required by ALA. CODE §§ 11-47-

23 and 11-47-192, as discussed in Section II., *supra*.  As the Court held above, "failure to file the statutorily mandated claim within six months acts as a procedural bar to all tort claims against the City."  *Wheeler v. George*, Nos. 1070484, 1070487, 1070514, 2009 WL 4506591, at *17 (Ala. Dec. 4, 2009).   Waldrop did not file a claim within six months.  For this reason, the City and the Mayor in her official capacity are entitled to judgment as a matter of law on Waldrop's defamation claim.

IV.  Waldrop's Section 1981 Claims (by and through Section 1983):

A.  Statute of Limitations

Waldrop contends that the City and the Mayor discriminated against him on the basis of race in violation of section 1981.  Specifically, Waldrop claims that the City denied him "the opportunity for a position as a police officer on the basis of his race, White, in violation of § 1981." Pl.'s Am. Compl. ¶ 74, doc. 1, ex. 16.  He claims that the Mayor "denied the Plaintiff the opportunity to be hired for a position to which he was qualified on the basis of his race, white, in violation of § 1981." Pl.'s Am. Compl. ¶ 80, doc. 1, ex. 16.  The City and the Mayor contend that they are entitled to summary judgment on these claims because they are barred by the two year statute of limitations.

The statute of limitations for a § 1981 claim brought pursuant to § 1983 depends upon whether the cause of action existed prior to the 1991 amendment to §

1981.  If the cause of action was "made possible by the 1991 amendments to § 1981," then the statute of limitations is four years, as provided in § 1658(a).  *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337-38 (11th Cir. 2008) (the court acknowledged that "[w]ere it not for the 1991 Act, Baker's complaint would fail to state a claim under § 1983.").  If, however, the cause of action existed prior to December 1, 1990, then the statute of limitations is two years, as provided in ALA. CODE § 6-2-38(l).  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S.Ct. 1836, 1845, 158 L.Ed.2d 645 (2004).  Waldrop's claim that the City and the Mayor discriminated against him because of his race in denying him employment is a claim that existed prior to 1991.  *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164, 176-77, 109 S.Ct. 2363, 2372-73, 105 L.Ed.2d 132 (1989).  Because Waldrop's claim is a type of claim that existed prior to the 1991 amendments, the two year statute of limitations, as provided in ALA. CODE § 6-2-38(l), applies to his claim.

The conduct giving rise to Waldrop's claim occurred in or around late July and early August 2005.  Waldrop filed his original complaint on July 11, 2007.  He did not assert his § 1981 claim, however, until he filed his amended complaint on May 4, 2009, which is well beyond the two year statute of limitations.  The Court must therefore determine whether Waldrop's claims relate back pursuant to FED. R. CIV. P. 15.

21

Waldrop's § 1981 claim against the Mayor in her individual capacity does not relate back.  As discussed above regarding Waldrop's defamation claim against the Mayor in her individual capacity, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Krupski*, 130 S. Ct. at 2496.  It is clear that Waldrop did not make a mistake concerning the Mayor's identity.  It is clear that he was fully aware of her role in the dispute.  For this reason, Waldrop has failed to meet the requirements of FED. R. CIV. P. 15(c)(1)(C).  His § 1981 claims against the Mayor in her individual capacity therefore do not relate back to the date of the filing of his original complaint.  Accordingly, the Mayor in her individual capacity is entitled to judgment as a matter of law on this claim.

The § 1981 claim against the City, however, requires a different analysis because the City was already a defendant in this case at the time the amended complaint was filed.  Thus, for the § 1981 claim to relate back, the claim must "ar[i]se out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."  FED. R. CIV. P. 15(c)(1)(B).  "'The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the

claim now being asserted.'" *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254, 1260 (11th Cir. 2008), *quoting Davenport v. United States*, 217 F.3d 1341, 1345 n. 8 (11th Cir. 2000) (citation omitted).  Although Waldrop added a new theory of recovery when he added his § 1981 claim, the factual allegations supporting that claim were included in his original complaint.  For this reason, the Court finds that Waldrop's  § 1981 claim against the City and the Mayor in her official capacity relates back to the original complaint, and is therefore not barred by the statute of limitations.

B. The Elements of a § 1981 Discrimination Claim

The City and the Mayor contend that they are entitled to summary judgment on Waldrop's § 1981 claim because Waldrop cannot establish one of the essential elements of a prima facie case, that the Defendants filled the position with a person outside Waldrop's protected class.  Waldrop counters that the City and the Mayor initially hired an African-American, but she later declined the position before she actually started working.

The elements of a § 1981 race discrimination claim are the same as a Title VII claim.  *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000).  Because Waldrop does not present direct evidence of discrimination, he must first establish a *prima facie* case of discrimination.  *Brown v. Ala. Dep't of Transp.*,

597 F.3d 1160, 1174 (11th Cir. 2010), *citing Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  "In a traditional failure-to-hire case, the plaintiff establishes a prima facie case by demonstrating that: (1) []he was a member of a protected class; (2) []he applied and was qualified for a position for which the employer was accepting applications; (3) despite h[is] qualifications, []he was not hired; and (4) the position remained open or was filled by another person outside of h[is] protected class." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002), *citing Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999).  "If a plaintiff makes the requisite showing, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010), *citing Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir.2002) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).  "The employer 'need not persuade the court that it was actually motivated by the proffered reasons.'" *Brown*, 597 F.3d at 1174 (citations omitted).  "Rather, if the employer 'articulat[es] one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination.'" *Brown*, at 1174 (citations omitted).  "'[B]ecause the plaintiff bears the burden of establishing pretext [for

discrimination], he must present 'significant probative' evidence on the issue to avoid summary judgment.'" *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citations omitted).  "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Mayfield*, 101 F.3d at 1376-77 (citations omitted).  "Plaintiff may demonstrate that [the defendants'] reasons were pretextual by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1348-49 (11th Cir. 2007), *quoting Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir.2004), *cert. denied*, 546 U.S. 960, 126 S.Ct. 478, 163 L.Ed.2d 363 (2005) (other citation omitted). "However, a reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'"  *Springer*, 509 F.3d at 1349, *quoting Brooks*,  446 F.3d at 1163 (11th Cir.2006) (other citation omitted).

In this case, Waldrop has failed to establish a *prima facie* case of discrimination.  Contrary to his assertion, the undisputed evidence is that the City hired Joshua Barnett, a white male, rather than Candice Hill, an African-American

female.  Because the City hired a person in the same class as Waldrop, he has failed to establish a *prima facie* case of discrimination.  For this reason, the City is entitled to judgment as a matter of law on this claim.

Even assuming that Waldrop could establish a *prima facie* case of discrimination, the burden then shifts to the defendants to show a legitimate, nondiscriminatory reason for its decision.  The City has provided the minutes from the Personnel Committee Meeting on August 1, 2005, which sets for the reasons that the committee made its decision.   In particular, the committee determined that Waldrop "was not considered a positive for the public image of the department." Mins. of Personnel Comm. Meeting, doc. 10, ex. 7.  Clearly, the City has shown a legitimate, nondiscriminatory reason.  The burden then shifts to Waldrop to offer evidence of pretext.  Waldrop provided testimony from Marvin McCormick that the Mayor had told him that "there were lawsuits pending against the city, and that she needed to have a minority in place."  Aff. of Marvin McCormick, ¶ 12, doc. 15, ex. 8.   Waldrop also supports his contention with the Personnel Committee's identification of Candice Hill, an African-American woman, as the "most needed candidate."  Mins. of Personnel Comm. Meeting, doc. 10, ex. 7.  Having reviewed this evidence, however, the Court finds that Waldrop has failed to produce any evidence that the City's reason for failing to hire him was false and that

26

discrimination was the real reason.  Because of his failure to produce any evidence, Waldrop has failed to show the existence of a genuine issue of material fact.  The City and the Mayor are therefore entitled to judgment as a matter of law on this claim.

## CONCLUSION

For the reasons stated herein, the court finds that the Motion of the Defendants for Summary Judgment (doc. 9) is due to be **GRANTED** in favor of Defendants, the City of Heflin, Alabama, and Anna Berry, against Plaintiff Daniel H. Waldrop on all claims asserted by Waldrop against the City of Heflin and Anna Berry.

A separate Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 20th day of August, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge